## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Bersain Francisco Perez De Leon**

    v.

**Richard Luna, Warden,**
**FCI Berlin, et al.**

Case No. 1:25-cv-424-PB-TSM
Opinion No. 2026 DNH 041

## MEMORANDUM AND ORDER

Bersain Francisco Perez De Leon is subject to a reinstated final order of removal. For about fourteen months, De Leon has been in federal custody, the last eleven of which his removal has been stayed by the First Circuit while he litigates his immigration status. Before the Court is De Leon's petition for a writ of habeas corpus. For the reasons set forth below, I grant his petition to the limited extent of ordering the government to reevaluate his detention as directed by 8 C.F.R. § 241.4(k)(2)(ii).

## I.  BACKGROUND[1]

De Leon, a Guatemalan national, has unlawfully entered the United States three times. Doc. 17-1 at 2-3. After crossing the southern border in

---

[1]    The facts material to resolving De Leon's petition are not in dispute and drawn from the pleadings and attached exhibits.

2010, De Leon was apprehended in Arizona and removed on an expedited basis under 8 U.S.C. § 1225(b)(1). Id. at 2; Doc. 17-4 at 1. In 2014, he was caught again in Texas and removed per the 2010 order of removal, reinstated based on his illegal reentry pursuant to 8 U.S.C. § 1231(a)(5). Doc. 17-1 at 3; Doc. 17-6 at 1. When De Leon returned a year later, he avoided detection, allowing him to remain free in the United States for the next ten years. Doc. 15 at 3; Doc. 17-1 at 3.

In February 2025, Immigration and Customs Enforcement ("ICE") apprehended De Leon for the third time in Massachusetts. Doc. 17-1 at 3. Again per section 1231(a)(5), ICE reinstated De Leon's 2010 order of removal. Doc. 17-5 at 1. This time, De Leon expressed fear of returning to Guatemala, causing U.S. Citizenship and Immigration Services ("USCIS") to interview him in April. Doc. 17 at 3. USCIS determined that De Leon did not have a credible fear of torture or persecution on a protected ground if removed to Guatemala. Doc. 17-1 at 3. On review requested by De Leon, an immigration judge ("IJ") agreed with USCIS's finding. Doc. 17-7 at 1.

De Leon petitioned the First Circuit for review of the IJ's decision on May 5, 2025. See Perez-De Leon v. Blanche, No. 25-1444 (1st Cir. filed May 5, 2025). Three days later, the government noticed its intent to remove De Leon, leading him to seek a stay of his removal pending resolution of his petition.

2

See id. A panel of the First Circuit ultimately granted his request on May 21. Id. De Leon's appeal remains pending and his removal stayed. See id.

Since he was apprehended last February, De Leon has remained in federal custody. Doc. 17-1 at 4. ICE is currently detaining him at Federal Correctional Institution Berlin, a medium-security prison in northern New Hampshire. See id. at 4. ICE reviewed De Leon's custody status as required by 8 C.F.R. § 241.4 in May 2025 and decided not to release him, concluding that his two prior removals make him a flight risk. Doc. 17-3 at 1. De Leon's custody has not been reviewed since. See Doc. 17-1 at 4. ICE represents that his next review under section 241.4 is scheduled for May 2026. See id.

In October 2025, De Leon petitioned this Court for a writ of habeas corpus, asserting that his continued detention violates the Immigration and Nationality Act and his due process rights under the Fifth Amendment. Doc. 1. The parties agreed to brief the Court on the issues presented by De Leon's petition, which they completed on March 31, 2026. See Doc. 15; Doc. 17. De Leon's petition is now ripe for resolution.

## II. <u>STANDARD OF REVIEW</u>

When a person is held "in custody in violation of the Constitution or laws or treaties of the United States," habeas corpus relief is appropriate. 28 U.S.C. § 2241(c)(3). The habeas petitioner carries the burden of proving that his detention is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009)

("The burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner."). If a petition "present[s] only issues of law," it may be resolved on the merits without a hearing. See 28 U.S.C. § 2243; see also R. Governing Section 2254 Cases 8(a); LR 7.4(c).

### III.  ANALYSIS

De Leon's arguments are best sorted by the two kinds of relief for which they advocate. De Leon principally invokes Zadvydas v. Davis, 533 U.S. 678 (2001), to argue that he is entitled to release because his removal to Guatemala is not reasonably foreseeable. In the alternative, De Leon claims that ICE has failed to periodically reconsider his custody status as required by 8 C.F.R. § 241.4 and the Fifth Amendment's Due Process Clause. While I conclude that De Leon cannot attain his outright release under Zadvydas, he is indeed entitled to further review of his custody under section 241.4. My reasoning follows.

### A.    Release

In Zadvydas, the Supreme Court "read an implicit limitation" into 8 U.S.C. § 1231(a)(6) which requires an alien to be released after six months if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 689, 701. To argue that his removal is not foreseeable, De Leon points to his wife and daughter's success in obtaining asylum "based on the exact same factual matrix that led to" his

own unlawful entry. See Doc. 15 at 3-4. De Leon posits that, given his family's success, the First Circuit is all but guaranteed to reverse the IJ's adverse credible-fear finding in his case too, inevitably preventing his removal.

This argument is squarely foreclosed by First Circuit precedent. In G.P. v. Garland, the First Circuit rejected a Zadvydas claim brought by an alien who was detained while his withholding-only proceedings unfolded. See 103 F.4th 898, 900-02 (1st Cir. 2024). While acknowledging that the alien's detention had surpassed the period deemed presumptively reasonable in Zadvydas, the court concluded that his detention persisted not because his removal was unforeseeable, but because his case remained pending for further proceedings. See id. at 902. G.P. thus was not at risk of interminable detention, as there was no doubt that the government would readily remove him once his withholding-only proceedings concluded. See id.

In so ruling, the First Circuit further emphasized that the alien's likelihood of ultimate success on the merits of his withholding claim, even if a "complete certainty," was outside the purview of a collateral proceeding. See id. at 903-05. The court partially grounded this conclusion on the country-specific findings underlying withholding of removal, noting that such relief only prevents the government from removing an alien to the country of which he has a credible fear of returning, leaving open the government's option to

5

remove him elsewhere. See id. at 902, 905; see also Johnson v. Guzman Chavez, 594 U.S. 523, 531-32 (2021) ("[B]ecause withholding of removal is a form of country specific relief, nothing prevents DHS from removing the alien to a third country other than the country to which removal has been withheld . . . ." (citation modified)). In G.P., it was thus irrelevant to the alien's Zadvydas theory that the court had separately remanded the alien's merits petition with favorable instructions, see 2023 WL 4536070, at *8 (1st Cir. July 13, 2023), since his success on remand would not forestall his removal to another country altogether. See 103 F.4th at 903-05.

So too, here. De Leon is not in federal custody because the government is unable to effectuate his removal to Guatemala; he remains in custody because of the First Circuit's stay temporarily preventing that removal. See Perez-De Leon, No. 25-1444. De Leon's detention is thus not indefinite. Cf. Zadvydas, 533 U.S. at 682 (concluding only that "indefinite" detention would "raise serious constitutional concerns"). He will either prevail at the First Circuit and eventually obtain relief from removal to Guatemala, potentially securing his release, or he will not, in which case he will be removed. Like in G.P., one of those two outcomes is all but guaranteed once De Leon has exhausted his administrative remedies, leaving "little chance of a removable-but-unremovable limbo for him." See 103 F.4th at 902; see also Mandarino v. Ashcroft, 318 F. Supp. 2d 13, 18 (D. Conn. 2003) ("As much of the delay in the

present case is attributable to legal proceedings commenced by petitioner in an effort to prevent his removal, there is no evidence that his protracted detention is attributable to the actions of the government.").

Moreover, for the reasons explained in G.P., even if De Leon has the sure shot for relief from the First Circuit that he presents, that likelihood alone cannot form the basis for this Court to collaterally relieve him from detention in the interim. See 103 F.4th at 903-05. Should the factual predicate for his wife and daughter's asylum prove to merit withholding of De Leon's removal to Guatemala too, the government could still seek to remove him to another country instead. See id. at 902, 905.

A final note: for the first time in his brief, De Leon alternatively requests a bond hearing before an IJ. See Doc. 15 at 9. In Guzman Chavez, however, the Supreme Court made clear that "aliens who were removed from the United States but later reentered without authorization, were subject to reinstated orders of removal, and then sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders"—in other words, aliens in exactly De Leon's position—are "not entitled to a bond hearing while they pursue withholding of removal." 594 U.S. at 526. Principally, the Court drew this conclusion from those aliens' detention under section 1231, which lacks the release provisions of 8 U.S.C. § 1226. See id. at 534-44. Conceding that his detention is governed by section

1231, see Doc. 15 at 3, De Leon does not attempt to explain how his case falls outside the ambit of Guzman Chavez, nor could he. As with his claim for release under Zadvydas, I accordingly decline De Leon's request for a bond hearing under section 1226.

## B.    Periodic Custody Reviews

With outright release out of reach, De Leon secondarily argues that he is at least entitled to "ongoing evaluations" of his custody. Doc. 15 at 4. He contends that his yearlong detention has gone "without a single administrative evaluation" of its necessity, thereby failing to comply with 8 C.F.R. § 241.4. Id. at 5.

The government counters that De Leon was in fact afforded a 90-day custody review as required by 8 C.F.R. § 241.4(k)(1)(i). As evidence, the government supplies copies of a "Notice to Alien of File Custody Review" dated April 9, 2025, advising De Leon of such a review that was to take place on May 9, see Doc. 17-2, and a written "Decision to Continue Detention" denying release later in May, see Doc. 17-3. De Leon signed to acknowledge receipt of each. See Doc. 17-2 at 3; Doc. 17-3 at 4. The government concedes, however, that ICE did not provide De Leon with a custody review at the 180-day mark as ordinarily required by 8 C.F.R. § 241.4(k)(2)(ii). Instead, it contends that the First Circuit's stay on his removal provided "good cause" to postpone the review under that provision. See 8 C.F.R. § 241.4(k)(3).

As a preliminary matter, De Leon's contention that he has received no review of his custody status whatsoever does not comport with the government's documentation of a 90-day review compliant with subsection (k)(1)(i). This disparity is especially puzzling given that De Leon does not claim that the government neglected to provide him with his complete immigration record (known as the "A-file") as ordered, which presumably contained this documentation. De Leon's conclusory assertion that no review ever occurred, with no explanation for the contradictory documentation in the record, instead seems untethered to the particulars of this case. At minimum, his argument to the contrary is too undeveloped to support a factual dispute on the present record. See Ribeiro-Almeida v. FCI Berlin, Warden, 2025 DNH 139, 811 F. Supp. 3d 245, 249 (D.N.H. 2025) (declining to afford habeas relief where supporting "allegations are conclusory and undeveloped").

Even so, the government's own admission to postponing De Leon's 180-day review warrants careful examination. Construing De Leon's briefing to target that omission specifically, I conclude that ICE has contravened section 241.4 in failing to perform that review.[2]

---

[2] For this reason, De Leon's failure to support his claim that ICE failed to conduct a 90-day review is ultimately immaterial to the disposition of his petition. As explained further below, the 90-day and 180-day reviews are functionally identical in their relevant respects, making any injunctive relief

9

Section 241.4 requires that ICE review an alien's custody "[p]rior to the expiration of" the 90-day removal period. 8 C.F.R. § 241.4(k)(1)(i). If the alien is detained and "not removed within the three-month period following the expiration of the removal period," ICE may either "release the alien" or "refer the alien . . . for further custody review." Id. § 241(k)(1)(ii). Section 241.4 provides that this additional review "be conducted at the expiration of the three-month period after the 90-day review or as soon thereafter as practicable," id. § 241(k)(2)(ii), effectively rendering it the alien's "180-day custody review," Doc. 17 at 11. If the 180-day review counsels the alien's continued detention, "[a] subsequent review shall ordinarily be commenced . . . within approximately one year" and annually thereafter unless the alien makes an intervening "showing of a material change in circumstances" between annual reviews. 8 C.F.R. § 241.4(k)(2)(iii).

That said, this schedule of reviews is not completely fixed. An ICE official may, "in his or her discretion," "schedule a review of a detainee at shorter intervals when he or she deems such review to be warranted." Id. § 241.4(k)(2)(v). Likewise, an ICE official may also, "in his or her discretion, suspend or postpone the custody review process if such detainee's prompt

---

necessary to remedy their respective violations the same. Compare 8 C.F.R. § 241.4(k)(1)(i) with id. § 241.4(k)(2)(ii).

removal is practicable and proper, or for other good cause." Id. § 241.4(k)(3). Still, the regulation's postponement provision is clear that "[r]easonable care" must be "exercised to ensure that the alien's case is reviewed once the reason for delay is remedied or if the alien is not removed from the United States as anticipated at the time review was suspended or postponed." Id.

Here, the government maintains that, at the time that ICE issued its 90-day decision to detain De Leon, it "anticipated that [his] removal to Guatemala would occur promptly." Doc. 17 at 11. Once the First Circuit stayed his removal, however, ICE postponed De Leon's 180-day review based on subsection (k)(3), claiming that the First Circuit's stay constituted "good cause" for the delay. Id. Accordingly, ICE has not reviewed De Leon's custody status since its 90-day review in May 2025. See id.

That failure plainly violates subsection (k)(3). An alien's nonfrivolous attempt to challenge his removal through avenues of relief to which he is legally entitled cannot constitute "good cause" to postpone compliance with his regulatory right to reviews of his custody while those proceedings play out. Cf. Abiodun v. Gonzales, 217 F. App'x 738, 742 (10th Cir. 2007) (applying right of access to courts to immigration detainees); Adekoya v. Chertoff, 431 F. App'x 85, 89 (3d Cir. 2011) (per curiam) (same). The same follows for the reviewing court's election to temporarily enjoin the challenged removal so it has a chance to adjudicate its lawfulness.

11

The government's contrary view of what "good cause" means in subsection (k)(3) collapses of its own weight. Two sentences after endorsing postponements for "good cause," the same provision unambiguously directs that ICE must review an alien's custody "if the alien is not removed from the United States as anticipated" when review was first postponed.[3] 8 C.F.R. § 241.4(k)(3). In other words, reviews must resume once it becomes apparent that an alien is, for now, staying put. Treating a stay of removal as "good cause" to postpone such reviews would thus be a nonsensical reading of the regulation, as the stay itself would trigger reversion back to an ordinary cadence of reviews, circularly and immediately undoing the postponement.

Here, there is no dispute that ICE anticipated removing De Leon to Guatemala at the time that the First Circuit issued its stay, nor that De Leon has remained in the United States since then. See Doc. 17-1 at 4. And the government acknowledges that in the interim ICE has made no attempt (much less taken "reasonable care," see 8 C.F.R. § 241.4(k)(3)) to reevaluate De Leon's detention. See Doc. 17 at 11. Its only excuse is the First Circuit's stay on De Leon's removal, which cannot constitute "good cause" for the

---

[3]     Notably, while an ICE official may postpone a custody review "in his or her discretion," subsection (k)(3) does not so defer as to when reviews must be resumed. See 8 C.F.R. § 241.4(k)(3). Instead, the text of that subsection mandates that an "alien's case is reviewed" under certain circumstances. See id. (emphasis added).

12

reasons explained. See id. Thus, ICE's failure to review De Leon's custody plainly violates subsection (k)(3). See 8 C.F.R. § 241.4(k)(3).

As other courts in the First Circuit have observed, an alien's detention is "'invalid'" where ICE has violated its own regulation to achieve that detention and the violated regulation was "'promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard." Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)); see also Jimenez v. Cronen, 317 F. Supp. 3d 626, 642 (D. Mass. 2018); de Rodriquez v. Hyde, 2026 WL 220416, at *3 (D. Mass. Jan. 28, 2026); cf. Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003) (reaffirming that the Board of Immigration Appeals "has the duty to follow its own regulations" (quoting Nelson v. INS, 232 F.3d 258, 262 (1st Cir. 2000)). This is so "even when the regulation requires more than would" the constitutional right it protects. Waldron, 17 F.3d at 518.

It is well-established that the custody review procedures in section 241.4 were created for the express purpose of complying with aliens' procedural due process rights. See Jimenez, 317 F. Supp. 3d at 641-42; Cruz v. Bondi, 2025 WL 3295485, at *2 (D.R.I. Nov. 26, 2025). Indeed, in promulgating the regulation, the Immigration and Naturalization Service explained that the regulation was "structured to afford th[e] type of review"

13

required by Zadvydas using "the procedural mechanisms that . . . courts have sustained against procedural due process challenges." Detention of Aliens Ordered Removed, 65 Fed. Reg. 80281, 80283 (Dec. 21, 2000). ICE's failure to provide a review under section 241.4 thus violates a critical right guaranteed by the regulation, making De Leon's continued detention based on that violation invalid. See Rombot, 296 F. Supp. 3d at 388.

Of course, if ICE's noncompliance with section 241.4 were merely a technical misstep, wholly corollary to the rights espoused in the regulation, he would not be entitled to relief. See Teng v. Mukasey, 516 F.3d 12, 17 (1st Cir. 2008) ("[F]ew proceedings are perfect and one can have real errors, including ones that adversely affect a party's interests, without automatically violating the Constitution."). But here, the individualized determinations that subsection (k)(3) promises are essential to the larger regulation's process guarantee and serve to facilitate its vindication of aliens' constitutional due process rights. Cf. Jimenez, 317 F. Supp. 3d at 650 (noting that section 241.4 "would likely be unconstitutional as applied" if it permitted detention "without an individualized determination" for six months beyond the expiration of their removal periods). ICE's failure to conduct a 180-day review of De Leon's custody is thus a sufficiently material violation of section 241.4 to warrant relief.

14

The question that remains is the appropriate scope of that relief. De Leon does not identify what relief would remedy ICE's failure to comply with subsection (k)(3). Like many courts in the First Circuit and elsewhere, however, I "favor issuing a conditional writ of habeas corpus in order to permit the government to cure a constitutional error." Massingue v. Streeter, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020) (citing Diaz Ortiz v. Smith, 384 F. Supp. 3d 140 (D. Mass. 2019); and Hechevarria v. Whitaker, 358 F. Supp. 3d 227 (W.D.N.Y. 2019)); see also Gentry v. Deuth, 456 F.3d 687, 692 (6th Cir. 2006) ("Absolute grants are . . . generally limited to situations where the nature of the error is simply incurable, such as a conviction under an unconstitutional statute."). Here, the relief that would remedy ICE's error mirrors the error itself: ICE must conduct the review that subsection (k)(3) requires.[4] I therefore grant De Leon relief to the extent that ICE is ordered to review his continued custody under section 241.4 as soon as practicable.

---

[4]    De Leon separately asserts that the "'undue emotional and financial distress' upon his family" from his detention violates his due process rights. Doc. 15 at 6-7. His arguments on this score are undeveloped and make no reference to any authority that would support this theory of relief.

Moreover, even generously construed to reference ICE's failure to conduct the 180-day review, it would nonetheless be inappropriate to reach De Leon's purely constitutional argument given that it would, at best, merit the same remedy as his regulatory one. See Dupont v. Meserve, 2026 WL 74112, at *3 n.2 (D. Me. Jan. 9, 2026) (noting that canon of constitutional avoidance disfavors separate consideration of statutory and due process claims "when success on those claims provide[s] different remedies"); Bonitto

## IV.  <u>CONCLUSION</u>

De Leon's petition for a writ of habeas corpus, Doc. 1, is granted to the extent that the government must promptly review his custody status as directed by 8 C.F.R. § 241.4(k)(2)(ii). The government shall afford De Leon with notice and the opportunity to be heard in advance of this review to the extent required by 8 C.F.R. § 241.4(h) and otherwise comply with the requirements of 8 C.F.R. § 241.4(d)-(f). Moving forward, the government may not postpone further reviews of De Leon's custody status under 8 C.F.R. § 241.4(k)(3) based on the First Circuit's stay of his removal.

The parties shall file a status report within fourteen days.

SO ORDERED.

<u>/s/ Paul J. Barbadoro</u>
Paul J. Barbadoro
United States District Judge

April 17, 2026

cc:   Counsel of Record

---

v. Bureau of Immigr. & Customs Enf., 547 F. Supp. 2d 747, 758 (S.D. Tex. 2008) (ordering custody review under section 241.4 as remedy for similar procedural due process violation). Accordingly, insofar as they are distinguishable, I do not reach De Leon's due process claims.